IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LAMAR HOSEY,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br>WARDEN MATTHEW B. HAMIDULLAH,<br>FCI ESTILL,<br><br>        Defendants. | CIVIL ACTION NO. 0:06-3236-RBH-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA). The Defendants filed a motion to dismiss or for summary judgment on June 1, 2007.

As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on June 4, 2007, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a "motion" in opposition to summary judgment on July 2, 2007, and the Defendants filed a reply on July 26, 2007. Defendants' motion is now before the Court for disposition.[1]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)

1



**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that he is a federal prisoner housed at the Federal Correctional Institution in Estill, South Carolina. Plaintiff alleges that on March 17, 2006 he was running on the soccer field at the prison when he stepped into a hole or unlevel portion of the field and broke his right knee. Plaintiff alleges that the "unleveled grounds did not have warning signs of the hazard-area." Plaintiff alleges that the Defendant Hamidullah, Warden of the Institution (sued in his individual capacity under Bivens), "is responsible for the operation and management of the FCI-Estill soccer field." Plaintiff further alleges that the Defendant BOP (sued under the FTCA) "is responsible for the operation and management of FCI-Estill staffs." Plaintiff has attached several prison forms to his Complaint wherein he complains about the condition of the soccer field and about having received insufficient medical treatment for his injury. Plaintiff seeks appropriate follow-up medical care as well as monetary damages. See generally, Verified Complaint with attached Exhibits.

As attachments to their motion, Defendants have submitted numerous exhibits which include copies of medical records reflecting Plaintiff's medical care. Defendants have also submitted an affidavit from Jacquelyn Reed-Bush (Defendants' Exhibit 8), wherein Reed-Bush attests that she

---

[1](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion to dismiss or for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



is the medical records administrator at FCI-Estill, and that as part of her duties she oversees the scheduling of outside medical trips for inmates. Reed-Bush attests that consultant services for inmates at FCI-Estill are provided through a contract with Medical Development International (MDI), and that this contract provides that when an inmate requires the services of an orthopaedic surgeon, one of two particular doctors is used, depending on which one MDI schedules for the patient.

Reed-Bush attests that Plaintiff injured his leg on March 17, 2006, following which he was taken to the emergency room at the local hospital. Plaintiff was subsequently discharged and returned to FCI-Estill with a referral from the emergency room physician to see orthopaedic surgeon "Dr. Sambock" the following week. However, Dr. Sambock was not one of the orthopaedic surgeons under contract with MDI, so an appointment was instead made with Dr. Leland Stoddard, also an orthopaedist. Plaintiff's appointment with Dr. Stoddard was scheduled for March 28, 2006, the earliest available appointment time. After being seen by Stoddard, Plaintiff was scheduled for a follow-up on May 12, 2006. However, Dr. Stoddard's office contacted MDI on May 10, 2006 to cancel the follow-up appointment with instructions for Plaintiff's surgical staples to be removed in-house at the institution.[3] Reed-Bush attests that she then notified the clinical director at FCI-Estill of this development. See generally, Reed-Bush Affidavit.

The Defendants have also submitted an affidavit from Isaac Rhodes (Defendants' Exhibit 10), who attests that he is a recreation specialist at FCI-Estill, and that his duties include the routine inspection of the recreation areas at FCI-Estill to ensure that they are maintained in a safe manner. Rhodes attests that he conducts both daily and weekly inspections of recreation areas to

---

[3]Plaintiff's leg had been surgically repaired. See Defendants' Exhibit 9.

3



ensure that they are safe and free from hazards and debris, and that these inspections included the soccer field in March 2006. Rhodes attests that in conducting this inspection, he walks the field and looks at the area to ensure that it is safe and that there are no holes or large divots in the field. He also looks to see if there is any trash or debris on the field that might make the area unsafe. If so, he has an inmate orderly to immediately remove those items. Further, if he finds a hole, he contacts mechanical services to obtain dirt so that the area can be repaired. Rhodes attests that his weekly inspections are documented on a checklist, a true and correct copy of which is attached to his affidavit as Exhibit A, and that there were no holes in the soccer field at FCI-Estill in March 2006. See generally, Rhodes Affidavit, with attached Exhibit.

As attachments to his memorandum opposing summary judgment, Plaintiff has submitted copies of his inmate informal resolution documentation form, some medical documents, as well as an affidavit. In his affidavit, Plaintiff attests that he injured his right knee on March 17, 2006 when he stepped into a hole that was not immediately visible on the soccer field. Plaintiff further attests that he had surgery performed on this injury on March 28, 2006, but that he has not received any follow-up examination by Dr. Stoddard or any other orthopaedic surgeon regarding his knee as to the success or failure of the surgery. Plaintiff attests that after he injured his knee, a "town hall meeting" was held by unit manager Liz Carlson in "March or May 2006", where Carlson informed inmates that the soccer field would be closed for the repair of holes and unlevel grading. Plaintiff attests that he has continuously complained of pain in his knee and limited range of motion since his surgery, but that he limited his sick call sign-ups because he had been assured by health service administrators that he would receive a follow-up with Dr. Stoddard.

Finally, Plaintiff attests that he has observed the Defendant Hamidullah inspect the

4



recreation yard and walk around the track and on the soccer field, and has also observed recreation officer Rhodes speed walk multiple laps around the track as exercise. Plaintiff attests that he has not seen Rhodes inspect the soccer field for holes or any unlevelness. Plaintiff also attests that on more than one occasion a "MLP Eneje" has informed him that a follow-up visit to the orthopaedist was necessary to ensure that his knee was healing properly. See generally, Plaintiff's Affidavit.

As an attachment to their reply memorandum, Defendants have submitted an affidavit from Elizabeth Carlson, who attests that she is a unit manager at FCI Estill involved in case management, programing, and administrative process. Carlson attests that Plaintiff's injury was the first and only serious injury she can recall ever occurring on the soccer field. Carlson further attests that, following Plaintiff's injury, Warden Hamidullah "walked the field with various staff...and did not find any holes or other problems." Carlson attests that she conducted a "town hall meeting" on March 27, 2006, at which she advised inmates that the soccer field was being checked for problems and that they would be repaired if any were discovered. Carlson attests that she did not tell inmates that the soccer field was being closed for repair of holes and unlevel grading, and that to the best of her knowledge no problems were found with the soccer field. See generally, Carlson Affidavit.

Defendants have also submitted a second affidavit from Isaac Rhodes, who attests that he inspects the recreation areas, including the soccer field, each morning when he arrives at work. With respect to Plaintiff's claim that the recreation areas were closed in March or May 2006 for repair of holes and unlevel grading, Rhodes attests that, while the prison does periodically obtain dirt from mechanical services to refresh the playing fields to counteract the effects of normal usage, he does not recall, nor do prison records reflect, any such occurrence between March and May of 2006. Rhodes attests that, even when new dirt is received, at most the fields are closed for an hour or so

5



while inmate crews spread the dirt over the fields. Rhodes attests that the recreation areas are in good shape, and that when he sees a hole during any inspection or otherwise, he takes steps to have it filled that same day. Finally, Rhodes attests that if he had seen a hole during his inspections in March 2006, he would have obtained the dirt and had the hole filled, but that there is no documentation reflecting that this occurred in March 2006. See generally, Rhodes Affidavit.

### **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### **I.**

### **(Bivens Claim)**

Since Plaintiff is a federal prisoner, his constitutional claims are evaluated under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra, which established



a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. Bivens, 403 U.S. at 397. A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983; therefore, caselaw involving § 1983 claims is applicable in Bivens actions, and vice versa. See Farmer v. Brennen, 511 U.S. 825 (1994); Bolin v. Story, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); Campbell v. Civil Air Patrol, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001). As Hamidullah is a federal official, he is subject to suit under Bivens for damages in his individual capacity.[4] However, Hamidullah asserts that, even if he is subject to suit, Plaintiff has failed to present sufficient evidence to show that he violated Plaintiff's constitutional rights to survive summary judgment. The undersigned is constrained to agree.

In his Complaint, Plaintiff generally alleges that Hamidullah, as Warden at FCI-Estill, is responsible for the operation and management of the soccer field. In a "clarification" of his claims filed March 8, 2007, Plaintiff asserts that he is alleging that Hamidullah was "negligent" for failing to properly maintain and ensure that the soccer field was free from hazardous holes and uneven ground. However, while Plaintiff can pursue a negligence claim under the FTCA,[5] a claim of negligence is not actionable under Bivens. Cf. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987); Burton -Bey v. United States, 100

---

[4] Hamidullah argues, inter alia, that Plaintiff's claims should be dismissed because he has only been sued in his official capacity. However, giving Plaintiff's pleadings the liberal construction to which they are entitled, the undersigned has assumed for purposes of summary judgment that Plaintiff's damages claims have been asserted against the named Defendant in his individual capacity. Cruz v. Beto, supra.

[5] Plaintiff further states in his "clarification" that Hamidullah's negligence is "clearly an FTCA claim."

7



F.3d 967 (Table), 1996 WL 654457 (10th Cir. 1996) ["[A] claim that defendants acted negligently...[does not] provide plaintiff with an actionable Bivens claim."]. Therefore, Plaintiff's Bivens claim based on the condition of the soccer field should be dismissed.

Plaintiff also states in his "clarification" that he has intended to assert in this lawsuit that the medical staff at FCI-Estill were deliberately indifferent to his serious medical needs due to their failure to transport him to the orthopaedic surgeon who performed surgery or to another qualified consultant specialist for post-operative care. However, Hamidullah is not subject to liability for any constitutional violations committed by the prison's medical staff, even if such violations were found to have in fact been committed. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977); Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006) (Bivens case); Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubbs v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999) ["liability...must be based on the personal involvement of the defendant"], cert. denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996). See also Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill. 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"]. Hamidullah is not a physician, and as such to the extent he was even involved in any decisions made with respect to Plaintiff's medical care, he may not be held personally liable for decisions made by medical personnel. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896

8



F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Exhibit to Plaintiff's Complaint [Request for Administrative Remedy dated August 4, 2006, signed by the Defendant Hamidullah].

While it is possible Hamidullah could be held liable for the conduct of the medical staff at FCI-Estill if that conduct was the result of an official policy or custom for which Hamidullah was responsible; see Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)); Plaintiff has presented no evidence of the existence of any official policy or custom put in place by the Defendant Hamidullah which provided for improper medical care in this situation. Further, even assuming for purposes of further discussion of Plaintiff's claim that Hamidullah *could* be held liable under Bivens for Plaintiff's medical care, in order to survive summary judgment Plaintiff still has to present evidence sufficient to create a material issue of fact as to whether Hamidullah or any of the medical officials at the prison were deliberately indifferent to his serious medical needs. Estelle, 429 U.S. at 106; Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32, 34 (1990). After careful review of the affidavits and other exhibits presented to this Court, the undersigned finds and concludes that, whatever Plaintiff may think about the level of care he received, he has failed to submit evidence sufficient to create a genuine issue of material fact as to whether his constitutional rights were violated. *Cf.* Samuels v. Martin, No. 06-1743, 2007 WL 1650415 at *2nd (D.Conn. May 31, 2007).

9



The only allegations on this issue contained in Plaintiff's Complaint relate to his administrative pursuit of remedies concerning his medical treatment. See Complaint, Exhibits E-G. These documents reflect that after his surgery, Plaintiff requested follow-up treatment and was advised on or about June 13, 2006 that he was on the rotation for a follow-up medical appointment with a doctor. See Informal Resolution Document Form dated June 13, 2006. In a subsequent request for administrative remedy form dated July 17, 2006, Plaintiff complained that he had been informed by "Bradley" that he was no longer scheduled for follow-up care because, since he was not in pain, follow-up care was not necessary. In his response dated August 4, 2006, the Defendant Hamidullah denied this request, noting as follows:

> Investigation reveals on March 17, 2006, you were transported to the Health Services Department for an evaluation of an injury which occurred on Recreation's football field. You stated you were jogging in the field and your right knee popped. After a thorough evaluation by the mid-level practitioner (MLP), you were diagnosed with a torn ligament of the right knee. The MLP applied ice to the affected area and wrapped your right leg with an Ace bandage. You were prescribed Tylenol with codeine, two tablets by mouth "STAT," by the clinical director. The clinical-director recommended you to be sent to an outside facility for further assessment of your case. You returned from the emergency room (ER) the same day. On March 17, 2006. The clinical director approved a prescription for Tylenol with Codeine, two tablets four times daily for 5 days. Also, you were placed on convalescence for 2 months. On March 31, 2006, you had surgery on your right patella ligament. You were placed on Tylenol with codeine, two tablets four times daily for 3 days.
>
> Investigation also reveals you were scheduled for a follow-up appointment with the orthopaedic surgeon. Nevertheless, on May 10, 2006, the orthopaedic surgeon's office manager called to cancel the appointment. She advised the staples could be removed by the clinical director. Medical records staff tried to reschedule your appointment; however, the orthopaedic surgeon advised you did not need a follow-up appointment and refused to see you. On May 25, 2006, you were scheduled for an appointment with the MLP to have your cast and staples removed. The MLP and the clinical director gave you instructions regarding exercises which were permissible for your condition, and you were placed on pain medication to be used as needed.
>
> Therefore, your Request for Administrative Remedy is denied, in that appropriate care was rendered to you.



Plaintiff's exhibits reflect that his subsequent appeals were also denied.

Defendants' exhibits also confirm that Plaintiff received immediate treatment for his injury and then received follow-up care, although obviously not the care that Plaintiff wanted. See Defendants' Exhibits 4-9. Specifically with respect to Plaintiff's follow-up care, Plaintiff's medical records reflect that he was discharged from the hospital following his surgery on March 31, 2006 with instructions to take Tylenol for pain. Defendants' Exhibit 5, p. 3. Although a follow-up appointment was scheduled with the orthopaedist (Dr. Stoddard), Dr. Stoddard himself later cancelled that appointment and directed the institution medical staff to remove Plaintiff's cast and surgical staples. Id, p. 3; see also Defendant's Exhibit 8, ¶¶ 7-8. Following this procedure, the surgical site appeared to be well healed with no sign of infection, and Plaintiff was provided with information about how to exercise his knee. Defendants' Exhibit 5, p. 4. Two months later Plaintiff reported to sick call complaining of pain and swelling of his knee, but an examination revealed no swelling and he was given an appointment to see a physician's assistant on July 28, 2006. Id, at p. 5. Plaintiff returned to sick call on July 26, 2006, stating that he "just wanted to know what exercises to be doing". It was noted that Plaintiff had walked into the examination area without crutches and without any visible problems, and a physical examination again revealed no swelling, nor any atrophy or other deformities. Id, p. 6. Plaintiff's medical records reflect that the physician assistant explained and demonstrated the knee exercises that should be done, and also prescribed pain medication to be taken as needed. Id. Plaintiff did not thereafter report any further complaints concerning his leg until October 12, 2006, when he came to sick call stating that he wanted to get some soft shoes. Id, pp. 9-10. Plaintiff's records reflect that the physician assistant explained to Plaintiff that soft shoes were not clinically indicated for his condition, and advised Plaintiff to

11



continue to perform his knee exercises. Id. Plaintiff filed this lawsuit the following month.

These documents do not show a violation of Plaintiff's constitutional right to proper medical care. While Plaintiff cites to his central office administrative remedy appeal dated September 18, 2006 (attachment to his Complaint) as supporting his claim that follow-up care by an orthopaedic surgeon was necessary to ensure that his knee was healing properly, that document is merely a statement by the *Plaintiff*, not a medical official. Plaintiff has presented no evidence from a doctor to show that his treatment violated any duty of care. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]). Further, while the possibility of an internal referral to an orthopaedist is apparently[6] noted by a physician assistant on October 21, 2006; Defendants' Exhibit 5, p. 10; this notation does not mean that Plaintiff's constitutional rights were being violated, or indeed that such a referral was even medically required.[7] Plaintiff is not a doctor, and his own self-serving, general and conclusory claim that he is not being provided with adequate medical care is not evidence that his constitutional rights are being violated. See Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; Bender v. Suburban

---

[6]The actual notation is hard to read, but the undersigned has accepted Plaintiff's characterization of this document for purposes of summary judgment.

[7]This notation was also made only a few weeks before Plaintiff filed this lawsuit.

12



Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

In sum, the actual medical records and other evidence provided to the Court, including Plaintiff's own exhibits, provide no support for his medical claim. While Plaintiff was obviously dissatisfied with the follow-up medical care he has been provided, for purposes of a constitutional claim, whether or not Plaintiff was provided with the care he desired or requested is immaterial. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) [A physician's actions only rise to the level of deliberate indifference when the treatment provided is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."]; *cf.* Casey v. Lewis, 834 F.Supp. 1569, 1583 (D.Ariz. Apr. 5, 1993) ["[A] mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference."]. Therefore, this claim should be dismissed. See Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

## II.

### (FTCA Claim)

Plaintiff is also asserting his claim regarding the condition of the soccer field under the FTCA, 28 U.S.C. § 2671-2680. Specifically, Plaintiff alleges in his Complaint that the soccer

13



field was negligently maintain, causing his injury. See also "Clarification" filed March 8, 2007. The FTCA waives sovereign immunity and allows suits against the United States[8] for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope...of...employment." 28 U.S.C. § 1346(b).[9] Whether any government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred", in this case South Carolina. Id.

In order to prove negligence in South Carolina, Plaintiff must prove by a preponderance of the evidence that 1) the Defendant had a legal duty of care; 2) the Defendant failed to discharge that duty; and 3) the Defendant's breach proximately caused him injury. Goode v. St. Stephens United Methodist Church, 494 S.E.2d 827, 834 (S.C. 1997); Hubbard v. Taylor, 529 S.E.2d 549 (S.C.App. 2000). Plaintiff is required to show negligence with reasonable certainty, not through mere conjecture, and he may not attempt to prove negligence through the doctrine of res ipsa loquitur. Eickhof v. Beard-Laney, 20 S.E.2d 153, 155 (S.C.1942); Crider v. Infinger Transportation Co., 148 S.E.2d 732, 735 (S.C. 1966). Plaintiff may also show an affirmative legal duty of care to him arising from a statute if the plaintiff is a member of the class of persons the statute is intended to protect, and the essential purpose of the statute is to protect the plaintiff from the kind of harm he suffered. Rayfield v. South Carolina Dep't of Corrections, 374 S.E.2d 910, 914 (S.C.Ct.App. 1988).

---

[8]Although Plaintiff has listed the Defendant for this claim as being the Bureau of Prisons, defense counsel does not object to substitution of the United States as the proper party Defendant. See Defendants' Brief, p. 27.

[9]In order to obtain relief in federal court under the FTCA, a litigant must first have exhausted their administrative remedies. See 28 U.S.C. § 2675; McNeil v. United States, 508 U.S. 106, 113 (1993) ["The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."]. The United States does not contest exhaustion of administrative remedies in this case.

14



Here, an affirmative legal duty of care towards the Plaintiff does exist by virtue of 18 U.S.C. § 4042, which provides that the Bureau of Prisons "shall...provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States."  However, after careful review of the evidence in this case and consideration of the standards required to succeed on a tort claim in this Court, the undersigned does not find that Plaintiff has set forth evidence of a viable federal tort claim sufficient to survive the Defendant's motion for summary judgment.  While the Government obviously had a legal duty of care to the Plaintiff, the evidence does not show that the Defendant negligently failed to discharge that duty.  Plaintiff alleges that he broke his right knee when he stepped into a hole on the soccer field; however, he has provided no evidence to show there actually was a "hole" on the soccer field, other than his own general and conclusory allegations in his Complaint that such a hole existed. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].  Plaintiff has provided no pictures, statements from other inmates or individuals, or documentary evidence to support this claim. Rather, Plaintiff points to his Exhibit A attached to his Complaint [informal resolution documentation form], in which he requests that "the soccer field be leveled so no incidents such as mine doesn't happen again....".   In response to this request, the counselor's comments state: "A work request has been submitted to the facilities department for field grading and hole filling."  However, while this was certainly a reasonable response to Plaintiff's request and injury, it does not constitute evidence that the facilities department, assuming they followed through with this work request, actually found any grading problems or holes that needed filling. See Exhibits-Carlson and Rhodes Affidavits.

In any event, even assuming Plaintiff's claim that he stepped in a "hole" to be true for

15



purposes of summary judgment, the Defendant has submitted evidence to show that there was no negligence in the maintenance of the soccer field. The recreation specialist for FCI-Estill has submitted an affidavit wherein he attests that he routinely inspected the soccer field to ensure that it was safe and free from hazards and debris, and that there were no "holes" in the soccer field in March 2006. Attached to this affidavit are copies of weekly facilities and equipment check sheets dated March 2, 9, 16, and 30, 2006, none of which show any "discrepancies" in the soccer field or that any "repairs [were] required". See Defendants' Exhibit 10 (Rhodes Affidavit, with attached Exhibits); see also Rhodes and Carlson Affidavits (Reply Exhibits). The Defendants have also submitted a document from another recreation specialist who was present on the soccer field at the time of Plaintiff's injury, and who stated that "in reviewing the soccer field on the date of [Plaintiff's] injury I have never observed holes in the soccer field." Defendants' Exhibit 3. Plaintiff has presented no evidence to contradict the Defendants' evidence showing that the soccer field was inspected weekly or to show that, following his injury, any holes were located or any grading or repair work was found to be necessary. Eickhoff v. Beard-Laney, 200 S.E.2d 153, 154 (1942) [Plaintiff must show negligence with reasonable certainty and not through mere conjecture]; Johnson v. U.S.Government, 258 F.Supp. 372, 376 (D.Va. 1966) [prison official's duty to keep prisoners entrusted to their care and custody safe is not absolute but only requires exercise of ordinary diligence under the circumstance]; Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) [explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal

16



quotation marks omitted)]..

Absent any evidence to show that prison officials did not take proper steps to maintain the soccer field or that the soccer field was in such poor shape as to establish a breach of the duty of care owed by prison officials to inmates, Plaintiff's negligence claim is subject to summary judgment. Crider, 148 S.E.2d at 735 ["[I]n order for a plaintiff to recover damages there must be proof, not only of injury, but also that it was caused by the actionable negligence of the defendant....The doctrine of Res ipsa loquitur does not apply"]; House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Rule 56(e), Fed.R.Civ.P. [once the moving party submits evidence to show that judgment on the pleadings is appropriate, in order to oppose summary judgment the opposing party must respond with "specific facts showing there is a genuine issue for trial"]. Therefore, this claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

July 30, 2007

17



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

18

